## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
JEANETTE DELORSE WILLIAMS    :    Civ. No. 3:16CV01777(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISIONER, SOCIAL SECURITY :
ADMINISTRATION[1]            :    October 22, 2019
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Jeanette Delorse Williams ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Plaintiff has moved to reverse the Commissioner's decision. [Doc. #20]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #22].

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

[2] This matter was transferred to the undersigned on October 10, 2019. [Doc. #23].

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #20]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #22]** is **DENIED**.

I.  **PROCEDURAL HISTORY**[3]

Plaintiff filed concurrent applications for DIB and SSI on January 7, 2013, alleging disability beginning November 1, 2012. See Certified Transcript of the Administrative Record, Doc. #15, compiled on January 13, 2017, (hereinafter "Tr.") at 248-63. Plaintiff's applications were denied initially on April 17, 2013, see Tr. 156-63, and upon reconsideration on July 9, 2013. See Tr. 166-71.

On December 12, 2014, plaintiff, represented by Attorney Allan Rubenstein, appeared and testified by videoconference at a hearing before Administrative Law Judge ("ALJ") John Benson. See generally Tr. 39-113. Vocational Expert ("VE") Warren Maxim appeared and testified by telephone at the administrative hearing. See Tr. 83-10; see also Tr. 245-47. On March 5, 2015, the ALJ issued an unfavorable decision. See Tr. 8-29. On September 1, 2016, the Appeals Council denied plaintiff's

_____

[3] Simultaneously with her motion, plaintiff filed a Stipulation of Facts. [Doc. #20-1].

request for review of the ALJ's decision, thereby making the
ALJ's March 5, 2015, decision the final decision of the
Commissioner. See Tr. 2-5. The case is now ripe for review under
42 U.S.C. §405(g).

Plaintiff, now represented by Attorney Ivan M. Katz, timely
filed this action for review and moves to reverse the decision
of the Commissioner. [Doc. #20]. On appeal, plaintiff argues
that: (1) the ALJ failed to follow the treating physician rule;
(2) the ALJ failed to develop the administrative record; (3) the
ALJ misconstrued the evidence of record and failed to assess
plaintiff's impairments in combination; and (4) the ALJ's step
five findings are not supported by substantial evidence. See
generally Doc. #20-2.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination
involves two levels of inquiry. First, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. Second, the Court must decide whether
the determination is supported by substantial evidence. See
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial
evidence is evidence that a reasonable mind would accept as
adequate to support a conclusion; it is more than a "mere
scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial

evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is
not credible must nevertheless be set forth with sufficient
specificity to permit intelligible plenary review of the
record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-
61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human
Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a
finding is potentially dispositive on the issue of disability,
there must be enough discussion to enable a reviewing court to
determine whether substantial evidence exists to support that
finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL
1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v.
Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4,
1994)).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.

2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507
(2d Cir. 2009)).

Finally, some of the Regulations cited in this decision,
particularly those applicable to the review of medical source
evidence, were amended effective March 27, 2017. Those "new
regulations apply only to claims filed on or after March 27,
2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018)
(summary order). Where a plaintiff's claim for benefits was
filed prior to March 27, 2017, "the Court reviews the ALJ's
decision under the earlier regulations[.]" Rodriguez v. Colvin,
No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept.
4, 2018); White v. Comm'r, No. 17CV4524(JS), 2018 WL 4783974, at
*4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended
effective March 27, 2017, the Court reviews the ALJ's decision
under the earlier regulations because the Plaintiff's
application was filed before the new regulations went into
effect." (citation omitted)).

III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is
under a disability is entitled to disability insurance benefits.
42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore
entitled to benefits, plaintiff must demonstrate that she is

unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed"

impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The residual functional capacity ("RFC") is what a person is still capable of doing

despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

**IV.   THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability within the meaning of the Social Security Act from November 1, 2012, through the date of" his decision, March 5, 2015. Tr. 13; see also Tr. 24. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2012. See Tr. 14. At step two, the ALJ found that plaintiff had the severe impairments of: "degenerative disc disease/mild bulging disc at L5-S1; chondromalacia of right knee; and obesity[.]" See id.

At step three, the ALJ determined that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 14. The ALJ specifically considered Listings 1.02 (major dysfunction of a joint) and 1.04 (spine disorders). Id. The ALJ next found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scopes; she can occasionally climb ramps or stairs; occasionally balance, stoop, and crouch; never kneel or crawl; and she must be allowed to alternate between sitting and standing, at will, provided that the individual is not off-task more than 10% of the workday.

Tr. 14-15 (sic). At step four, the ALJ concluded that plaintiff was "unable to perform any past relevant work[.]" Tr. 22. At step five, and after considering plaintiff's age, education, work experience and RFC, as well as the testimony of the VE, the ALJ found that other jobs existed in significant numbers in the national economy that plaintiff could perform. See Tr. 23-24.

## V.   DISCUSSION

Plaintiff asserts several arguments in support of reversal or remand. For the reasons stated below, the Court finds that: (1) the ALJ failed to provide good reasons for discounting the opinion of plaintiff's treating physician; (2) the ALJ improperly relied on the opinion of the non-examining state

agency consultant over that of plaintiff's treating physician;
and (3) the ALJ's determination concerning the medical necessity
of plaintiff's assistive devices is not supported by substantial
evidence.

A.   Treating Physician Rule

Plaintiff asserts that the ALJ failed to follow the
treating physician rule when he assigned limited weight to the
opinions of plaintiff's treating physician, and credited the
opinion of a non-examining source over that of her treating
physician. See generally Doc. #20-2 at 4-11. Plaintiff also
appears to assert that the ALJ failed to provide "good reasons"
for discounting the opinions of her treating physician. See id.
at 9. Defendant responds that the ALJ properly considered the
medical opinion evidence, and was permitted to rely on the non-
examining source's opinion. See Doc. #22-1 at 9-13.

The ALJ assigned "great weight" to the opinion of Dr.
Virginia Rittner, a non-examining source who opined on July 8,
2013, that plaintiff could "perform work at the light exertional
level," with the further limitations of "occasionally climb
ramps and stairs, occasionally climb ladders, ropes or
scaffolds, occasionally balance, and occasionally stoop, kneel,
crouch and crawl." Tr. 20 (sic); see also Tr. 139-40 (Dr.
Rittner's RFC determination). The ALJ reasoned: "While I am
mindful that this opinion was from a non-examining, and non-

treating expert source, it is consistent with the medical

evidence as a whole[.]" Tr. 20. Despite affording Dr. Rittner's

opinion great weight, the ALJ "imposed additional postural and

exertional limitations[,]" based on plaintiff's "testimony,

[and] her more recent treatment[.]" Id.

By contrast, the ALJ assigned "limited weight" to the

opinions of plaintiff's treating physician, Dr. Diep, because he

found that one opinion was "not fully supported by the evidence

of record[,]" and the other opinion "largely restate[d] the

claimant's subjective allegations, and self-reports." Tr. 22.

> 1.    *Applicable Law*

> "The SSA recognizes a 'treating physician' rule of
> deference to the views of the physician who has engaged
> in the primary treatment of the claimant," Green-
> Younger, 335 F.3d at 106. According to this rule, the
> opinion of a claimant's treating physician as to the
> nature and severity of the impairment is given
> "controlling weight" so long as it "is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in the case record." 20 C.F.R.
> §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at
> 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20

C.F.R. §§404.1527(c), 416.927(c). If the opinion, however, is

not "well-supported" by "medically acceptable" clinical and

laboratory diagnostic techniques, then the opinion cannot be

entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2),

416.927(c)(2).[4] When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the treating source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §§404.1527(c), 416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

"[T]he opinions even of non-examining sources may override treating sources' opinions and be given significant weight, so long as they are supported by sufficient medical evidence in the record." Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 427

---

[4] As previously noted, some Regulations applicable to the review of medical source evidence were amended effective March 27, 2017. Those new Regulations do not apply to this case. See Section II, supra; see also Doc. #22-1 at 7 n.4.

(S.D.N.Y. 2010); see also Little v. Colvin, No. 5:14CV63(MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

However, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (citation and internal quotation marks omitted), aff'd, 652 F. App'x 25 (2d Cir. 2016); accord Biro v. Comm'r of Soc. Sec., No. 6:17CV06098(EAW), 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition. However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." Biro, 2018 WL 4666068, at *4.

2.    *Analysis – Dr. Diep's Opinions*

The Court first considers plaintiff's argument that the ALJ failed to provide "good reasons" for assigning limited weight to the April 22, 2014, medical source statement (hereinafter the "medical source statement") of plaintiff's treating physician,

Dr. Diep. See generally Doc. #20-2 at 5-11. The ALJ assigned

"limited weight" to Dr. Diep's medical source statement "because

it is not fully supported by the evidence of record." Tr. 22.

Specifically, the ALJ stated, in pertinent part:

> [T]here is a significant dichotomy between the findings
> of the claimant's primary care provider, who is not a
> specialist, and the findings of her orthopedist. For
> example, where the primary care provider reports a
> positive straight leg raise, and ultimately prescribes
> the cane and walker the orthopedist consistently noted
> a negative straight leg raise. (Exhibit 12F/5, 11). Her
> physical therapist also noted a negative straight leg
> raise, negative Babinski and intact deep tendon
> reflexes. (Exhibit 15F/7). The disconnect between the
> primary care provider, and the orthopedic specialists
> and physical a therapist further degrades the
> reliability of Dr. Diep. Additionally, Dr. Diep opinion
> is also inconsistent with the State agency consultants'
> findings.

Tr. 22 (sic).

The ALJ's conclusion that there was a "significant

dichotomy" between the findings of Dr. Diep and plaintiff's

other providers fails to account for the deterioration of

plaintiff's condition between plaintiff's visits with those

providers and Dr. Diep's examination of plaintiff. The ALJ

specifically relies on pages 5 and 11 of Exhibit 12F, which

appear on pages 525 and 531 of the administrative record. These

records are dated November 18, 2013, and February 10, 2014,

respectively. See Tr. 525, Tr. 531. The physical therapy record

cited by the ALJ, Exhibit 15F at page 7, appears on page 638 of

the record, and is dated July 15, 2013. By contrast, Dr. Diep's one treatment note reflecting a positive straight leg raise test is dated June 27, 2014, and reported that plaintiff was "unable to do straight leg raise bilaterally without significant pain[.]" Tr. 552. On July 10, 2014, Dr. Diep noted that plaintiff was "[e]xperiencing acute on chronic pain without any isolated event." Tr. 550. During a physical examination conducted on July 10, 2014, plaintiff had "diminished [range of motion] in all ranges of lumbar spines secondary to pain. Mostly in flexion[,]" and "was unsteady[]" on a "Get up and Go test[.]" Id. (sic). On July 18, 2014, plaintiff presented with similar symptoms on physical examination. See Tr. 546. The next month, on August 21, 2014, plaintiff presented to Dr. Diep for a follow-up, at which time plaintiff exhibited "[w]orrisome new symptoms such as frequent falls and new fecal incontinence[.]" Tr. 544. Neither the ALJ in his ruling, nor defendant in his briefing, appreciated the significance of the time gap between Dr. Diep's records and the other cited records, or the apparent deterioration of plaintiff's condition between July 2013 and June 2014. Accordingly, the alleged inconsistency between those records was not a good reason to discount Dr. Diep's medical source statement.

The ALJ also assigned limited weight to Dr. Diep's medical source statement because it was "inconsistent with the State agency consultants' findings." Tr. 22. Dr. Diep, however, issued her medical source statement more than eight months after state agency consultant Dr. Rittner issued her RFC determination, and more than one year after state agency consultant Dr. Hughes issued his RFC determination.[5] Despite the time gap between the opinions, the ALJ relied upon the differences between the

---

[5] Dr. Hughes opined that plaintiff was capable of work at the medium exertional level. See Tr. 118-20. The ALJ did not explicitly weigh the opinion of Dr. Hughes, but appears to have also afforded this opinion great weight. See Tr. 21 (referring to the "opinions" of the "State agency physicians" and finding that "those opinions do deserve great weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions as explained throughout this decision. In addition, those opinions were consistent with medical evidence of record."). The record does not support a finding that plaintiff is capable of medium work. Where the ALJ did not afford Dr. Diep's opinions controlling weight, his failure to explicitly explain the reasons for assigning great weight to the opinion of Dr. Hughes is error. See 20 C.F.R. §§404.1527(e)(2)(ii), 416.927(e)(ii) (effective August 24, 2012, to March 26, 2017) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant ..., as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."); see also 20 C.F.R. §§404.1527(e), 416.927(e) (effective March 27, 2017, and applicable to claims filed before March 27, 2017) ("[W]hen an [ALJ] gives controlling weight to a treating source's medical opinion, the [ALJ] is not required to explain in the decision the weight he or she gave to the prior administrative medical findings in the claim.").

opinions to assign limited weight to Dr. Diep's medical source statement.[6] In doing so, "[t]he ALJ provided no analysis regarding the possibility that plaintiffs condition deteriorated in the significant gap in time between the doctors' opinions." Balodis v. Leavitt, 704 F. Supp. 2d 255, 266 (E.D.N.Y. 2010) (sic). When there is such a gap, "the ALJ must explain his decision to choose the earlier opinion over the more recent opinion where deterioration of a claimant's condition is possible." Id. Here, the ALJ provided no such explanation.

The ALJ also appears to have discounted Dr. Diep's medical source statement based on the alleged contradictions between Dr. Diep's records and those of other providers related solely to plaintiff's back condition. The ALJ did not acknowledge that Dr. Diep's medical source statement also related to plaintiff's knee condition. See Tr. 492 ("Identify the particular medical or clinical findings ... which support your assessment or any limitations and why the findings support the assessment[:] Pt sees orthopedics for chronic back pain ... Sees ortho for arthritis of knees as well."); see also Tr. 494 (Dr. Diep's medical source statement noting plaintiff's "arthritis of knees[]"). Indeed, the examinations of plaintiff's knees by Dr.

---

[6] Additionally, neither Dr. Rittner, nor Dr. Hughes, had the benefit of a complete record or Dr. Diep's opinions when issuing their respective RFC determinations.

Diep are largely consistent with examinations performed by plaintiff's other medical providers. Compare, e.g., Tr. 543, Tr. 546, Tr. 550, Tr. 553 (2014 examinations of plaintiff's knees by Dr. Diep finding, inter alia: diminished range of motion; tenderness to medial joint line; and crepitus with full extension of both knees), with Tr. 452 (October 2013 examination of right knee by Dr. Tillman, noting that plaintiff's right knee was "swollen, tender to palpation along joint line, worst on medial surface, extension limited secondary to pain ... crepitus felt on extension"); Tr. 453 (Dr. Tillman diagnosed plaintiff with "[l]ikely osteoarthritis of R knee based on history and physical."); Tr. 529 (December 23, 2013, examination of plaintiff's right knee by P.A. Fries: "She has antalgic gait on the right. She has tenderness of the patellofemoral joint. ... There is tenderness over the medial joint line and lateral joint line. ... Range of motion is painful."); Id. (December 23, 2013, treatment record noting injection to right knee); Tr. 643 (February 21, 2014, treatment note reflecting a "normal" examination of plaintiff's right knee by Dr. Feliciano, but also indicating that an MRI of plaintiff's right knee reflected "some articular cartilage damage of the patellofemoral compartment and medial compartment[]"). The ALJ does not acknowledge these consistencies in his opinion. Thus, given that Dr. Diep's

medical source statement was also based on plaintiff's knee condition, the Court does not agree that there was a "significant dichotomy" between the findings of Dr. Diep and plaintiff's other providers that would support the assignment of limited weight to Dr. Diep's medical source statement.[7]

The ALJ appears to discount Dr. Diep's opinion because although she authored her medical source statement in April 2014, she "did not actively treat the claimant's back condition until July 10, 2014." Tr. 19; see also Doc. #22-1 at 11. Defendant asserts that it is therefore "unclear what possible basis Dr. Diep had for issuing her opinions at that time[.]" Doc. #22-1 at 11 (sic). The record does not support the ALJ's statement, or the Commissioner's defense of it. First, as previously noted, Dr. Diep did not base her medical source statement solely on plaintiff's back condition, but also on plaintiff's knee condition. See Tr. 491-96. Second, treatment records authored by Dr. Diep and her colleagues that pre-date Dr. Diep's medical source statement reflect plaintiff's

---

[7] Defendant asserts: "[T]he ALJ also noted that, at a January 2014 general medical visit, Dr. Diep instructed Plaintiff to 'do[] back stretches at home and not limit her activity too much' – a far cry from the degree of restriction Dr. Diep endorsed in the disability paperwork just three months later." Doc. #22-1 at 11. This argument also fails to consider that Dr. Diep's medical source statement was based on a combination of plaintiff's impairments, and not just her back condition.

complaints of chronic knee and back pain and examinations of
those areas. See Tr. 564-65 (January 31, 2014, treatment note
documenting plaintiff's chronic back pain and reflecting an
examination of plaintiff's back); Tr. 568 (November 26, 2013,
treatment note documenting plaintiff's complaints of bilateral
knee pain and chronic back pain, with a physical examination
reflecting "hypertonicity over left sided paravertebral
muscles."); Tr. 570-71 (October 25, 2013, treatment note
documenting plaintiff's knee pain and chronic low back pain and
reflecting an examination of plaintiff's back and knees). Third,
Dr. Diep explicitly relied on an MRI of plaintiff's back, which
revealed "bulging disc of L3-L5." Tr. 492; see also Tr. 399.
Accordingly, the record supports a finding that Dr. Diep
appropriately relied on a combination of objective medical
evidence and plaintiff's subjective complaints when forming her
opinion.[8]

Accordingly, the Court finds that the ALJ failed to provide
good reasons for assigning limited weight to Dr. Diep's medical
source statement. Although Dr. Diep's opinion may not

---

[8] To the extent the ALJ assigned limited weight to Dr. Diep's
medical source statement because Dr. Diep noted that plaintiff's
pain was controlled by over the counter pain medication, see
Doc. #22-1 at 11, it is not apparent that the ALJ took into
consideration that plaintiff had affirmatively declined narcotic
pain medications because she "does not want to be addicted." Tr.
421.

necessarily be entitled to controlling weight, given the deference normally afforded to the opinions of a treating physician, the opinion should be re-evaluated to determine whether it is entitled to great or significant weight. See Correale-Englehart, 687 F. Supp. 2d at 427 ("[T]he treating-physician rule generally requires deference to the medical opinion of a plaintiff's treating physician[.]").

Finally, with respect to Dr. Diep's December 10, 2014, letter, the ALJ assigned "little weight to this letter" because it "largely restates the claimant's subjective allegations and self-reports." Tr. 22; see also Tr. 652-53. This is an inaccurate characterization of Dr. Diep's December 2014 letter. The letter specifically references MRIs of plaintiff's back and notes that plaintiff "has been evaluated on multiple occasions in my office for worsening back and knee pains." Tr. 652. Further, the Second Circuit has explicitly noted that a treating physician's reliance on a patient's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) (citation and internal quotation marks omitted); accord Balodis, 704 F. Supp. 2d at 267. Accordingly, the Court also finds that the ALJ failed to provide good reasons for

discounting Dr. Diep's December 2014 letter, also in violation of the treating physician rule. See, e.g., Mojbel v. Comm'r of Soc. Sec., 385 F. Supp. 3d 199, 204 (W.D.N.Y. 2019).

### 3. *Analysis – Dr. Rittner's Opinion*

The ALJ also erred by relying on the July 8, 2013, opinion of non-examining source Dr. Rittner over that of plaintiff's treating physician, Dr. Diep. Dr. Rittner's opinion was not based on a full record and failed to consider medical evidence documenting: (1) plaintiff's deteriorating condition, see, e.g., Tr. 546, Tr. 550, Tr. 546; (2) plaintiff's repeated complaints of hip pain and knee pain, see, e.g., Tr. 438-40, Tr. 480, Tr. 529, Tr. 543, Tr. 546, Tr. 552-53, Tr. 559, Tr. 643; and (3) and Dr. Diep's two opinions. See Tr. 137-38 (Dr. Rittner's Findings of Fact and Analysis of Evidence). Additionally, although Dr. Rittner's Findings of Fact noted plaintiff's prescription for a walker with a seat, Dr. Rittner did not have the benefit of plaintiff's medical records that documented her regular use of the walker. See, e.g., Tr. 438 (August 21, 2013, treatment note: "She is using a rolling walker for ambulation[.]"); Tr. 440 (November 18, 2013, treatment note: "She is ambulating with a wheeled walker."); Tr. 444 (December 9, 2013, treatment note: "She is ambulating with a wheeled walker."); Tr. 529 (December 23, 2013, treatment note: "She ambulates with a walker."); Tr. 531 (February 10, 2014, treatment note: "She is ambulating with

a wheeled walker[.]"); Tr. 642 (February 21, 2014, treatment
note: "She is walking with a limp and using a walker."); Tr. 549
(July 10, 2014, treatment note reporting that plaintiff "[u]ses
walker and cane to ambulate long distances."); Tr. 552 (June 27,
2014, treatment note: "She requires a can for assistance in
ambulation and has required a walker with seat for prolonged
activities and walking.").

Thus, because Dr. Rittner's opinion was not based on a full
record, the ALJ should not have relied heavily on that opinion,
and certainly should not have allowed it to override the
opinions of Dr. Diep. See, e.g., Tarsia v. Astrue, 418 F. App'x
16, 18 (2d Cir. 2011) ("Because it is unclear whether [the state
agency medical consultant] reviewed all of Tarsia's relevant
medical information, his opinion is not 'supported by evidence
of record' as required to override the opinion of [the] treating
physician[.]"); Beutel v. Berryhill, No. 3:17CV1193(SALM), 2018
WL 3218662, at *7 (D. Conn. July 2, 2018) ("The opinion of the
non-examining physician ... was rendered without the benefit of
plaintiff's missing treatment records. It was also rendered
without the benefit of [the treating source's] opinions. Because
that opinion was not based on a full record, the ALJ should not
have relied heavily on it."); Jazina v. Berryhill, No.
3:16CV1470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017)

("The ALJ erred in assigning significant weight to the state agency medical consultants' under-informed opinions and in allowing their opinions to override those of plaintiff's treating physicians.").

B.    Consideration of Assistive Devices

Finally, although not addressed by the parties, the ALJ's determination concerning the medical necessity of plaintiff's cane and walker is not supported by substantial evidence. The ALJ stated, in pertinent part:

> With regard to the claimant's her need for an assistive
> device, I am noted persuaded that the claimant's primary
> care provider's prescription of a cane, or walker
> accurately reflects the claimant's capabilities. While
> this prescription was apparently a medical decision,
> this prescription is inconsistent with Dr. Rittner's
> opinion that the claimant can perform work at the light
> exertion level. ... I note that there is a lack of
> objective evidence showing that the claimant had such
> substantial signs, diagnostic imaging, or other testing
> that warrant the constant need for a walker. ... In
> addition, despite allegedly needing a walker, the
> claimant had not experienced any quad atrophy or
> reduction of lower extremity strength. (Exhibit 12F/9).
> Muscle atrophy is a common side effect of prolonged
> and/or chronic due to lack of use of a muscle in order
> to avoid pain. It can be inferred that, although the
> claimant experienced some degree of pain in her back and
> knee, the pain has not altered her use of her leg muscles
> to an extent that has resulted in atrophy.

Tr. 20 (sic).

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or

standing, and describing the circumstances for which it is needed[.]" SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). "In evaluating whether it is medically necessary for the claimant to use a cane, the ALJ 'must always consider the particular facts of a case.'" Walker v. Berryhill, No. 16CV250(FPG), 2017 WL 1437228, at *2 n.4 (W.D.N.Y. Apr. 24, 2017).

The ALJ's discussion of whether plaintiff's use of an assistive device is medically necessary does not properly consider the particular facts of this case. The ALJ has substituted his judgment for competent medical opinion. As an initial matter, although the ALJ found that plaintiff's prescription for a cane and a walker did not accurately reflect plaintiff's capabilities, the ALJ primarily focused on plaintiff's need for a walker, and did not specifically address plaintiff's need for a cane. See Tr. 20. Plaintiff's use of a cane is well documented throughout the record. See Tr. 546, Tr. 549-50; Tr. 552, Tr. 555, Tr. 557, Tr. 562, Tr. 564, Tr. 570. Indeed, Dr. Diep opined that plaintiff's use of a cane is medically necessary, see Tr. 492, and noted in December 2014 that plaintiff "experience[es] pain after walking for one block and through time, has required different assistive devices to move about. She started with a cane in early 2012 and proceeded

to require a seated walker." Tr. 652; see also Tr. 549 ("Uses walker and cane to ambulate long distances); Tr. 552 ("She requires a can for assistance in ambulation and has required a walker with seat for prolonged activities and ambulation." (sic)). Although the ALJ stated that the use of a cane is inconsistent with Dr. Rittner's opinion, for reasons previously stated, Dr. Rittner's opinion may not accurately reflect plaintiff's capabilities. "The matter of the cane was important. ... A persistent need for a cane is not consistent with a full range of performance at a light exertional level." Jones v. Berryhill, No. 16CV6540(FB), 2018 WL 4158317, at *7 (E.D.N.Y. Aug. 30, 2018).

The ALJ's decision that plaintiff's use of a walker is not medically necessary also is not supported by substantial evidence. First, it is not apparent that the ALJ considered plaintiff's obesity in connection with her need for a walker or other assistive device.[9] Rather, the ALJ relied on a purported "lack of objective evidence showing that claimant had such substantial signs, diagnostic imaging, or other testing that warrant the constant need for a walker." Tr. 20. It is not unreasonable to infer that plaintiff's obesity exacerbated her

---

[9] Plaintiff's obesity is well documented throughout the record, and the ALJ found plaintiff's obesity to be a severe impairment at step two of the sequential evaluation. See Tr. 14.

back and knee conditions, triggering the need for a walker or other assistive device. Second, plaintiff's unsteady and antalgic gait are documented throughout the record. See Tr. 407, Tr. 409, Tr. 421, Tr. 436, Tr. 440, Tr. 444, Tr. 449, Tr. 479, Tr. 529, Tr. 531, Tr. 546. Third, to the extent the ALJ found that plaintiff's need for a walker contradicted Dr. Rittner's opinion, Dr. Rittner did not have the benefit of records documenting plaintiff's deteriorating condition and extensive use of a walker. Last, the ALJ's statements concerning plaintiff's lack of atrophy impermissibly substituted the ALJ's judgment for that of Dr. Diep's competent medical opinion. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citation and quotation marks omitted). As the Second Circuit has noted: "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015); see also Quinto v. Berryhill, No. 3:17CV00024(JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) ("An ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion." (citation and internal quotation marks omitted)). Accordingly, the Court finds that the ALJ's determination concerning the medical necessity of plaintiff's

assistive devices is not supported by substantial evidence of record.

Thus, for the reasons stated above, remand is appropriate for the ALJ to reconsider (1) the medical opinion evidence, and (2) the medical necessity of plaintiff's assistive devices. In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments. On remand the Commissioner shall address the other claims of error not discussed herein. Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand.

## VI.  <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #20]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #22]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 22nd day of October, 2019.

___/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
